ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| RAFAEL VÉLEZ LEDESMA  Recurrente  v.  DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN  Recurrida | TA2026RA00207 | *Revisión Administrativa* procedente de la Comisión de Investigación, Procesamiento y Apelación  Caso Núm.:19AC-115  Sobre: Expulsión |
|---|---|---|

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de junio de 2026.

Comparece Rafael Vélez Ledesma (en adelante, recurrente o señor Vélez Ledesma) mediante recurso de *Revisión Judicial* presentado el 23 de abril de 2026 y nos solicita que revisemos la *Resolución* del 20 de febrero de 2026 emitida por la Comisión de Investigación, Procesamiento y Apelación (en adelante, CIPA). Mediante el referido dictamen la CIPA confirmó la expulsión del recurrente mediante adjudicación sumaria.

Por los fundamentos que exponemos a continuación, se confirma la *Resolución* recurrida.

**I.**

Surge del expediente que, el 18 de diciembre de 2018, el Oficial Ramón Salcedo Oquendo fue asignado a reforzar el puesto de entrada a la institución por instrucciones del Sgto. Gerardo de Jesús. A la hora de entrada del turno del oficial, Rafael Vélez Ledesma, el Oficial Salcedo procedió a realizar un registro rutinario. El Oficial Vélez Ledesma permite el registro de su lonchera,

el cual contenía dos (2) botellas identificadas con agua purificadas Marca Salutaris con un color marrón. Se procedió a abrir la botella, y dio un olor a Ron. El Oficial Vélez Ledesma admitió que era ron caña de tamarindo.[1]

El 19 de diciembre de 2018 se presentó una *Denuncia* en contra del recurrente por la posesión con la intención de distribuir, dispensar, transportar u ocultar sustancia controlada.[2]

Así las cosas, el 17 de enero de 2019, notificada el 22 de enero de 2019, el Departamento de Corrección y Rehabilitación (en adelante, DCR o recurrido) emitió una carta dirigida al señor Vélez Ledesma, en la cual se le imputó, entre otras cosas, el incumplimiento de la Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico, *infra,* el Reglamento para la Administración de los Recursos Humanos del Departamento de Corrección, *infra,* y el Manual para la Aplicación de Medidas Correctivas y Disciplinarias a los Empleados de la Administración de Corrección, *infra.*[3] Por tales razones, el DCR determinó suspenderlo sumariamente del empleo y sueldo con intención de destitución del puesto. Asimismo, le apercibió al recurrente de comparecer a una vista administrativa informal el día 28 de enero de 2019, en la que podrá presentar toda aquella prueba que considere necesaria.

Así las cosas, el 14 de marzo de 2019, el DCR emitió una determinación en una misiva, en la cual informó al recurrente su separación permanente del puesto que ocupaba.[4] Esto, ya que el recurrente incurrió en conducta impropia e inmoral al tratar de introducir sustancias controladas y bebidas alcohólicas a la institución correccional. Además, indicó que el 1 de febrero de 2019 se celebró una vista administrativa informal en la que compareció el recurrente acompañado de su representante legal.[5]

---

[1] Parte 2 del Expediente Caso núm. 19AC118 (CIPA), Entrada 6 del SUMAC TA, págs. 1-9.
[2] Íd., Anejo "Parte 1-Expediente Caso Núm. 19AC115 (CIPA)" del SUMAC TA, págs. 117-131.
[3] Íd., Anejo "Parte 3-Expediente Caso Núm. 19AC115 (CIPA)" del SUMAC TA, págs. 110-114.
[4] Íd., Anejo "Parte 7-Expediente Caso Núm. 19AC115 (CIPA)" del SUMAC TA, págs. 17-18.
[5] Íd.

Inconforme, el 9 de mayo de 2019, el señor Vélez Ledesma presentó una *Apelación* ante la CIPA.[6] El 14 de mayo de 2019, la CIPA emitió una *Notificación,* en la cual ordenó la paralización de los procesos. El CIPA paralizó los procedimientos al amparo de la Ley Federal *Puerto Rico Oversight, Management and Economic Stability Act,* 48 USC sec. 2101 *et seq.* (en adelante, PROMESA).[7]

Por otro lado, en ese pleito criminal, el 15 de noviembre de 2019, el Tribunal de Primera Instancia (TPI) emitió una Resolución en la que resolvió que el registro realizado fue uno ilegal, así que cualquier evidencia obtenida a partir del mismo es ilegal. Por tanto, el TPI declaró "Con Lugar" la Moción de Supresión de Evidencia y Admisiones presentada por el recurrente.

Posteriormente, la CIPA adquirió jurisdicción nuevamente al remover la paralización. Así las cosas, el 9 de agosto de 2021, el recurrente presentó *Moción de Resolución Sumaria.*[8] Allí, solicitó a la CIPA la reinstalación de su puesto, toda vez que se utilizó prueba inadmisible la cual fue suprimida en el procedimiento criminal. El 22 de septiembre de 2021, presentó su *Réplica a Petición de Resolución Sumaria,* en la cual sostuvo que no procede la resolución sumaria, dado a que, la acción administrativa es independiente de la criminal. Evaluada ambas mociones, la CIPA declaró "No ha Lugar" la *Moción de Resolución Sumaria* presentada por el recurrente.[9]

Luego de varios trámites procesales, que incluye además cancelaciones de vistas, el 23 de febrero de 2024, el DCR presentó *Moción de Desestimación* ante el CIPA, así como reiteró la ya presentada el 25 de octubre de 2023.[10] El 31 de marzo de 2024, el recurrente presentó *Oposición a Moción de Desestimación.*[11] El 29 de mayo de 2024, la CIPA emitió una *Resolución Interlocutoria* en la que declaró "No ha Lugar" la *Moción de Desestimación*

---

[6] Íd., Anejo "Parte 5-Expediente Caso Núm. 19AC115 (CIPA)" del SUMAC TA, págs. 25-27.
[7] Íd., págs. 14-16.
[8] Íd., Anejo "Parte 4-Expediente Caso Núm. 19AC115 (CIPA)" del SUMAC TA, págs. 2-8.
[9] Íd., Anejo "Parte 3-Expediente Caso Núm. 19AC115 (CIPA)" del SUMAC TA, pág. 52.
[10] Íd., Anejo "Parte 2-Expediente Caso Núm. 19AC115 (CIPA)" del SUMAC TA, págs. 90-129.
[11] Íd., Anejo "Parte 2-Expediente Caso Núm. 19AC115 (CIPA)" del SUMAC TA, págs. 19-33.

presentada por el DCR, así como reiteró que la vista en su fondo se celebrará el 18 de septiembre de 2024.[12]

Luego, el 16 de septiembre de 2024, el DCR presentó *Moción solicitando Resolución Sumaria.*[13] Allí, indicó que no existe controversia de hechos materiales que impidan a la CIPA resolver de manera sumaria. Añadió, que cobra mayor relevancia el procedimiento sumario, cuando el recurrente en la vista informal admitió que llevaba dos (2) botellas de ron de tamarindo en su bulto, aunque negó llevar sustancias controladas.[14] El 11 de octubre de 2024, el recurrente presentó *Moción en Oposición a Resolución Sumaria.*[15]

El 19 de marzo de 2025, la CIPA emitió una *Resolución* en la que de manera sumaria declaró "No ha Lugar" la *Apelación* presentada por el recurrente.[16] Esto, ya que determinó que el señor Vélez Ledesma incumplió el Artículo XVIII, D-4 del Manual para la Aplicación de Medidas Correctivas y Disciplinarias a los Empleados de la Administración de Corrección, la cual establece como conducta prohibida introducir o permitir la introducción de bebidas embriagantes y/o sustancias contraladas en una institución correccional. Esta tiene como acción disciplinaria la destitución en la primera falta. Asimismo, dispuso que el recurrente incumplió con el inciso H-18 que prohíbe incurrir en conducta impropia dentro o fuera del trabajo de tal naturaleza que afecte el buen nombre, o refleje descrédito al DCR o a cualquier agencia del gobierno de Puerto Rico.

Además, la CIPA determinó que los siguientes hechos no están en controversia:

1. A la fecha del 18 de diciembre de 2018 el Apelante ocupaba un puesto de carrera como Oficial Correccional en la Institución Correccional 1072 de Bayamón.

2. En la fecha mencionada en la determinación anterior y como parte de un registro al tiempo del Apelante comenzar su turno de trabajo, se le ocupó dos botellas de agua que aparentemente

---

[12] Íd., Anejo "Parte 2-Expediente Caso Núm. 19AC115 (CIPA)" del SUMAC TA, pág. 17.
[13] Íd., Anejo "Parte 1-Expediente Caso Núm. 19AC115 (CIPA)" del SUMAC TA, págs. 95-107.
[14] Íd, pág. 99.
[15] Íd., Anejo "Parte 1-Expediente Caso Núm. 19AC115 (CIPA)" del SUMAC TA, págs. 69-79
[16] Íd., Anejo "Parte 1-Expediente Caso Núm. 19AC115 (CIPA)" del SUMAC TA, págs. 53-65.

contenían ron caña con sabor a tamarindo, así como la sustancia prohibida conocida como marihuana.

3. Por los hechos antes mencionados el 19 de diciembre de 2018 la Policía de Puerto Rico radicó cargos criminales contra el Apelante ante el Tribunal de Primera Instancia, Sala de Bayamón, ¡por violaciones a los artículos 401 y 412 de la Ley de Sustancias Controladas; el Artículo 277 del Código Penal, así como el artículo 4.2(b) de la Ley de Ética Gubernamental.

4. Celebrada la vista de causa para arresto, así como la vista preliminar en las acusaciones de delitos graves, el Tribunal determinó causa para acusar al apelante por los Artículos 401, 412 y 277 del Código Penal. Se pautó lectura de acusación para el 7 de marzo de 2019 y juicio en sus méritos para el 26 de abril de 2019.

5. El 17 de enero de 2019 el Secretario de Corrección envió al Apelante carta de suspensión sumaria de empleo y sueldo, la cual fue notificada a éste el 22 de enero de 2019 informándole su intención de destitución del puesto de Oficial Correccional que ocupaba hasta ese momento en la agencia por infracciones a la Ley para la Administración y Transformación de los Recursos HumanosdelGobierno; a los Artículos 16.5, incisos 2 y 15 del Reglamento de los Recursos Humanos del Departamento de Corrección y Rehabilitación y de la Administración de Corrección.

6. El 14 de marzo de 2019 el Secretario de Corrección notificó al Apelante el resultado de la vista administrativa informal celebrada el 1 de febrero de 2019. Se le informó, además, que se concluyó que conforme la documentación que obraba en el expediente y la evidencia presentada en la vista administrativa informal había incurrido en conducta impropia e inmoral al tratar de introducir sustancias controladas y bebidas alcohólicas a la institución correccional. Se advirtió de su derecho a acudir a la Comisión de Investigación, Procedimiento y Apelación (CIPA).

7. El 15 de noviembre de 2019 el Tribunal de Primera Instancia emitió Resolución declarando ha lugar una solicitud del acusado [Apelante en nuestro caso] de la supresión de la evidencia incautada y admisiones del acusado, remitiendo el asunto para la continuación de los procedimientos.

8. El Apelante presentó su apelación ante esta Comisión el 9 de mayo de 2019.

9. El 12 de agosto de 2021 el Apelante presentó, mediante su representación legal, Moción de Resolución Sumaria. Alegó, en esencia, que debía declararse ha lugar la apelación presentada "*debido a que la determinación final y firme de un Tribunal de Bayamón que la evidencia incautada por el Departamento de Corrección y Rehabilitación era ilegal por no haber sido mediante orden judicial y que lo declarado por los testigos que se presentaron en la vista evidenciaria no derrotaba la presunción de ilegalidad de la incautación sin orden...*"

10.    Evaluada la Moción de Resolución Sumaria y la oposición del Apelado, así como de derecho aplicable, se declaró no ha lugar la solicitud del Apelante y se continuaron los procedimientos.

11.    El 27 de septiembre de 2024 el DCR radicó Moción Solicitando Resolución Sumaria en la que alega que procedía la destitución independientemente de la supresión de evidencia. La parte apelante se opuso mediante escrito de 15 de octubre de 2024 sosteniendo su posición de improcedencia de la destitución.[17]

El 8 de marzo de 2026, el señor Vélez Ledesma presentó *Moción de Reconsideración,* en la cual sostuvo que se le privó su derecho a confrontación al no celebrarse una vista y resolverse de manera sumaria.[18]

El 23 de abril de 2026, el recurrente comparece ante nos mediante recurso de *Revisión Judicial* y señala los siguientes errores:

1. **Erró la CIPA al dictar resolución sumaria y confirmar la expulsión del recurrente cuando existían controversias reales y materiales de hechos, y de credibilidad debido a que lo plasmado en los documentos presentados por el Departamento de Corrección y Rehabilitación; y lo declarado en la vista de supresión de evidencia contrastan con los hechos materiales enumerados en la Solicitud de Resolución Sumaria sobre la admisión del apelante de la posesión de dos botellas con licor ocupada en su lonchera el día 18 de diciembre de 2018, y de la "morcilla' que había en dentro de la lonchera cuando se le entregó al sargento Gerardo de Jesús González la lonchera ocupada por el oficial correccional Ramón Luis Salcedo Oquendo, lo cual requería la celebración de una vista formal en los méritos.**

2. **Erró la CIPA al dej[ar] sin efecto el juicio de novo programada para el miércoles 18 de septiembre de 2024, privar al recurrente de su derecho a confrontar y contrainterrogar a los testigos de cargo, violando así el debido proceso de ley**.

El 1 de junio de 2026, el recurrido presentó su oposición. Con el beneficio de la comparecencia de ambas partes procedemos a resolver.

---

[17] Íd., págs. 55-59.
[18] Íd., Anejo "Parte 1-Expediente Caso Núm. 19AC115 (CIPA)" del SUMAC TA, págs. 3-15.

## II.

### A. Revisión judicial de decisiones administrativas

La Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA sec. 9601 *et seq.,* mejor conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (en adelante, LPAU), establece el marco normativo que rige la revisión judicial de las decisiones emitidas por las agencias administrativas. *Otero Rivera v. USAA Fed. Savs. Bank,* 214 DPR 473, 484 (2024). Al revisar las determinaciones administrativas, este foro apelativo, está obligado a conceder deferencia a las decisiones de las agencias en vista de que estas poseen la experiencia y el conocimiento especializado respecto a los asuntos que les han sido delegados. *Katirias's Café v. Mun. de San Juan,* 2025 TSPR 33, 215 DPR ___ (2025) (citando a *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR,* 196 DPR 606, 626 (2016); *Pagán Santiago et al. v. ASR,* 185 DPR 341, 358 (2012).

En virtud de lo anterior, se ha considerado la razonabilidad de la actuación cuestionada como criterio rector al revisar el proceder de la agencia recurrida. *Katirias's Café v. Mun. de San Juan, supra.* Así pues, debemos evaluar que no se haya actuado de manera arbitraria o ilegal, o de forma tan irrazonable que constituya un abuso de discreción. *Torres Rivera v. Policía de PR, supra.* Por consiguiente, no puede otorgárseles un "sello de corrección automático bajo el pretexto de deferencia a aquellas determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a Derecho". *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 754 (2024). Es decir, si bien debemos concederles una amplia deferencia a las determinaciones de las agencias administrativas, dicha norma no es absoluta. Íd.

A tenor, la deferencia cede cuando: "(1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o los reglamentos; (3) ha mediado una

actuación arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales". Íd., (citando a *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021).

En este sentido, existen tres (3) aspectos que delimitan el alcance de la revisión judicial de las decisiones administrativas: "(1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si, mediante una revisión completa y absoluta, las conclusiones de derecho del ente administrativo fueron correctas". *Rolón Martínez v. Supte. Policía, supra*, pág. 36 (citando a *Pagán Santiago et al. v. ASR, supra*). Asimismo, nuestro más Alto Foro local ha reiterado que "al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática […]". *Vázquez et al. v. DACo*, 2025 TSPR 56, 215 DPR __ (2025).

La Sección 3.14 de la LPAU dispone lo siguiente:

> Una orden o resolución final deberá ser emitida por escrito dentro de noventa (90) días después de concluida la vista o después de la presentación de las propuestas determinaciones de hechos y conclusiones de derecho, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes o por causa justificada.
> La orden o resolución deberá incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o revisión según sea el caso.
> La orden o resolución deberá ser firmada por el jefe de la agencia o cualquier otro funcionario autorizado por ley.
> La orden o resolución advertirá el derecho de solicitar la reconsideración ante la agencia o de instar el recurso de revisión como cuestión de derecho en el Tribunal de Apelaciones, así como las partes que deberán ser notificadas del recurso de revisión, con expresión de los términos correspondientes. Cumplido este requisito comenzarán a correr dichos términos…
> 3 LPRA § 9654. (Énfasis nuestro).

De conformidad con lo expuesto, se ha interpretado que una orden o resolución final es aquella que "dispone del caso ante la agencia y tiene efectos adjudicativos y dispositivos sobre las partes". *Pérez López v. Depto.*

*Corrección*, 208 DPR 656, 672-673 (2022) (citando a *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527, 545 (2006)). En particular, la Sección 4.2 de la LPAU establece que:

> Una parte adversamente afectada por una orden o resolución <u>final</u> de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. 3 LPRA sec. 9672...

### B. Debido proceso de ley del empleado público

La Constitución de Puerto Rico reconoce el derecho a un debido proceso de ley en casos que se prive la libertad o propiedad. Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1. Véase, además, *Torres Rivera v. Policía de PR, supra*, pág. 624; *Vázquez González v. Mun. de San Juan*, 178 DPR 636, 643 (2010). En su vertiente procesal, el debido proceso de ley regula las garantías mínimas que el Estado debe proveer a todo ciudadano cuya vida, libertad o propiedad se vean afectadas. *Torres Rivera v. Policía de PR, supra*, pág. 624; *Picorelli López v. Depto. de Hacienda*, 179 DPR 720, 735–736 (2010); *Álamo Romero v. Adm. de Corrección*, 175 DPR 314, 329 (2009); *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 887–888 (1993).

Es sabido que, al empleado público se le reconoce un interés en la retención de su empleo, ya sea porque se encuentra protegido por ley —como los empleados de carrera— o cuando las circunstancias del empleo le creen una expectativa de continuidad. *Torres Rivera v. Policía de PR, supra*, págs. 624-25; *Rosa Maisonet v. ASEM*, 192 DPR 368, 384 (2015); *Adventist Health v. Mercado*, 171 DPR 255, 263 (2007); *S.L.G. Giovanetti v. E.L.A.*, 161 DPR 492, 506–507 (2004); *Orta v. Padilla Ayala*, 131 DPR 227, 241 (1992). Conforme a ello, el debido proceso de ley salvaguarda a los empleados de

carrera, ya que poseen un interés propietario sobre sus puestos. *Vázquez González v. Mun. de San Juan*, supra, pág. 643.

Así pues, la agencia promovente tendría que garantizar las exigencias mínimas del debido proceso de ley para privar al empleado de carrera de su puesto. *Torres Rivera v. Policía de PR, supra,* pág. 625; *S.L.G. Giovanetti v. E.L.A., supra,* págs. 506–507. Siendo ello así, es fundamental que la agencia cumpla con estos requisitos: "(1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en el expediente". *Rosa Maisonet v. ASEM, supra,* pág. 384; *Vázquez González v. Mun. de San Juan, supra,* pág. 643; *Domínguez Castro et al. v. E.L.A. I*, 178 DPR 1, 47 (2010); *Rivera Rodríguez & Co. v. Lee Stowell, etc., supra,* pág. 889.

De modo que, para afectar el derecho propietario del empleado público sobre su puesto se tiene que celebrar una vista informal previa en donde se le dé la oportunidad al empleado de ser escuchado. *Rosa Maisonet v. ASEM, supra,* pág. 384; *Vázquez González v. Mun. de San Juan, supra,* págs. 643–644. El derecho a ser oído está estrechamente vinculado a que se celebre una vista informal al empleado. Acerca de la naturaleza de la vista informal, nuestro Tribunal Supremo ha establecido que se debe dar previa a la destitución de un empleado. *U. Ind. Emp. A.E.P. v. A.E.P.,* 146 DPR 611, 618 (1998). Esta se considera el primer escalón procesal, "en el cual ambas partes expresan de manera informal los cargos y las posibles defensas que podrían ser utilizadas posteriormente ante el foro apelativo correspondiente". Íd. Esa vista informal no tendrá mayores garantías procesales, a menos que la ley orgánica o el reglamento de la agencia las conceda. Por tanto, "no establecerá procedimientos de descubrimiento de prueba ni vistas adversativas formales, ni concederá al empleado el derecho a confrontar toda la prueba en su contra". Íd., págs. 618-619.

Asimismo, la vista informal, previa al despido de un empleado público, debe contener estos componentes básicos para satisfacer el debido proceso de ley: "(1) una notificación de los cargos administrativos contra el empleado, (2) una descripción de la prueba con la que cuenta el patrono y (3) una oportunidad para que el empleado exprese su versión de lo sucedido". Íd., pág. 618 (citando a *Marrero Caratini v. Rodríguez,* 138 DPR 215 (1995); Véase, además, *Garriga Villanueva v. Mun. de San Juan,* 176 DPR 182, 197 (2009).

### C. Comisión de Investigación, Procesamiento y Apelación (CIPA)

La Ley Núm. 32 de 22 de mayo de 1972, según enmendada, mejor conocida como la *Ley de la Comisión de Investigación, Procesamiento y Apelación* (CIPA) es el organismo con autoridad para sancionar cuando se impute que hubo mal uso o abuso de autoridad a cualquier agente del orden público estatal o municipal, agente de rentas internas o cualquier otro funcionario del poder ejecutivo autorizado para efectuar arrestos. Art. 2(1), 1 LPRA sec. 172. En particular, la CIPA tendrá jurisdicción exclusiva para oír y resolver apelaciones cuando el jefe o director de la dependencia que se trate haya impuesto cualquier medida disciplinaria en relación con actuaciones cubiertas la aludida ley o con faltas leves en que se haya impuesto una suspensión de empleo y sueldo, así como faltas graves en el caso de miembros de la Policía Estatal o Municipal. Art. 2(2) de la Ley Núm. 32-1972, 1 LPRA sec. 172. La CIPA podrá ejercer sus funciones en primera instancia o en apelación. Art. 2(1)(2) la Ley Núm. 32-1972, 1 LPRA sec. 172.

La misma ley le permite adoptar los reglamentos necesarios para la realización efectiva de sus funciones. Art. 10 de la Ley Núm. 32-1972, 1 LPRA sec. 180. A esos fines, se creó el Reglamento para la Presentación, Investigación y Adjudicación de Querellas y Apelación ante la Comisión de Investigación, Procesamiento y Apelación, Reglamento Núm. 7952, 1 de diciembre de 2010, para regular los procedimientos investigativos y adjudicativos que se ventilen en CIPA. Este Reglamento reitera que la CIPA

tendrá jurisdicción para resolver apelaciones interpuestas por los funcionarios públicos de la Ley Núm. 32-1972, cuando el jefe o director de la dependencia haya impuesto cualquier medida disciplinaria cubierta por la misma ley. Art. 15 del Reglamento Núm. 7952, *supra.*

**De otra parte, el Artículo 26 del Reglamento Núm. 7952,** *supra,* **le confiere autoridad para disponer sumariamente de una querella o apelación.** (Énfasis nuestro). Esto podrá ser motu proprio del CIPA o a solicitud de parte. Íd. Ahora bien, al igual que la típica moción de sentencia sumaria en materia de civil, la misma solo procede cuando no hay controversia real de hechos y que como cuestión de derecho lo que corresponde es dictar resolución a favor de la parte promovente. Íd. Ahora bien, en los casos que se celebre una vista, esta se considerará como una especie de *juicio de novo,* en donde la CIPA tendrá la oportunidad de escuchar toda la evidencia y otorgarle el valor probatorio que a su juicio merezca. *Ramírez v. Policía de P.R.*, 158 DPR 320, 332 (2002); *Arocho v. Policía de P.R.*, 144 DPR 765, 772 (1998).

### D. Procesos Administrativos v. Procesos Penales

Es norma conocida que, en procesos administrativos disciplinarios, el hecho de que una persona haya sido absuelta en un proceso penal no impide que se formulen cargos administrativos por los mismos hechos que motivaron el caso penal. Esto, lo ha resuelto nuestro Tribunal Supremo, en el contexto de empleados públicos sometidos a un procedimiento administrativo para su destitución. *Trib. Exam. Méd. v. Cañas Rivas*, 154 DPR 29, 37 (2001); *San Vicente v. Policía de P.R.*, 142 DPR 1 (1996); *Pagán Hernández v. U.P.R.*, 107 DPR 720, 749 (1978); *Mundo v. Tribunal Superior*, 101 DPR 302, 304 (1973).

De modo que, "[l]a absolución penal no confiere inmunidad en el campo administrativo". *Trib. Exam. Méd. v. Cañas Rivas*, *supra*, pág. 37 (citando a *Pagán Hernández v. U.P.R., supra*, pág. 749). Esto se debe a que la acción administrativa es independiente de la criminal, ya que sus propósitos son

distintos y una no puede estar supeditada a la otra. *Trib. Exam. Méd. v. Cañas Rivas, supra*, pág. 37. Igualmente, se tratan de procedimientos que requieren diferentes grados de prueba. Íd.; *Mundo v. Tribunal Superior, supra*, pág. 306.

### E. Conducta del empleado del Departamento de Corrección y Rehabilitación

La Ley Núm. 8 -2017, según enmendada, 3 LPRA sec. 1469 *et seq.*, mejor conocida como la *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico*, se creó a los fines de "lograr transparencia, mejorar la productividad, eficiencia, motivación y compromiso en la prestación de los servicios públicos que se ofrecen al Pueblo de Puerto Rico". Sección 2.2, 3 LPRA sec. 1469a. En lo pertinente a la controversia que nos ocupa, la Sección 6.6(9) dispone que los empleados no podrán realizar, entre otras cosas, los siguientes actos:

.        .        .        .        .        .        .        .

(b) Utilizar su posición oficial para fines político partidistas o para otros fines no compatibles con el servicio público.

.        .        .        .        .        .        .        .

(e) Observar conducta incorrecta o lesiva al buen nombre de la agencia o al Gobierno de Puerto Rico.

(f) Incurrir en prevaricación, soborno o conducta inmoral.
. . . .

Asimismo, el Reglamento para la Administración de los Recursos Humanos del Departamento de Corrección y Rehabilitación y de la Administración de Corrección, Reglamento Núm. 7436, 7 de diciembre de 2007, dispone que el servicio de los oficiales correccionales debe ser adecuado y de acuerdo con la normativa que rige el DCR. Igualmente, se creó el Manual para la Aplicación de Medidas Correctivas y Disciplinarias a los Empleados de la Administración de Corrección, Departamento de Corrección y Rehabilitación, a los fines de informar al empleado de sus deberes y

obligaciones, así como las sanciones que se pueden tomar en caso de incumplimiento. Art. II, pág. 7.

El aludido Manual en el Artículo XVIII, Inciso D(4)(5) dispone que la posesión, uso distribución o venta de sustancias controladas conllevará destitución del empleo. Véase, pág. 55. Solo bastará que la conducta ocurra una primera vez para tal acción disciplinaria. Asimismo, el mismo artículo en su inciso H(18) dispone que se prohíbe al empleado incurrir en conducta que mancilla, deshonra o degrada la imagen del DCR o el Gobierno de Puerto Rico. Véase, pág. 66.

### III.

En esencia, el recurrente alega que, la CIPA erró al dictar resolución sumaria y confirmar la expulsión de su puesto cuando existían controversias de hechos materiales. Asimismo, sostiene que incidió la CIPA al privarlo de la celebración de una vista, en contravención del debido proceso de ley.

Conforme adelantamos, tales errores no se cometieron. Veamos

Surge del expediente que, el 18 de diciembre de 2018, el señor Vélez Ledesma mientras ejercía sus labores como oficial correccional, fue sujeto a un registro rutinario al comenzar su turno de trabajo. En ese registro, se le ocuparon dos (2) botellas plásticas con licor adentro, que el mismo admitió que era ron caña de tamarindo. Al mismo tiempo, se presentó una *Denuncia* en contra del recurrente por la posesión con la intención de distribuir, dispensar, transportar u ocultar sustancia controlada.[19]

Posteriormente, el DCR emitió una determinación en una misiva, en la cual informó al recurrente su separación permanente del puesto que ocupaba.[20] Esto, ya que el recurrente incurrió en conducta impropia e inmoral al tratar de introducir sustancias controladas y bebidas alcohólicas a la institución correccional. **Además, allí indicó que se celebró una vista**

---

[19] Íd., Anejo "Parte 1-Expediente Caso Núm. 19AC115 (CIPA)" del SUMAC TA, págs. 117-131.
[20] Íd., Anejo "Parte 7-Expediente Caso Núm. 19AC115 (CIPA)" del SUMAC TA, págs. 17-18.

**administrativa informal en la que compareció el recurrente acompañado de su representante legal.**[21] Inconforme, el señor Vélez Ledesma presentó una *Apelación* ante la CIPA, la cual resolvió mediante resolución sumaria al entender que no existía hechos en controversia. De tal acto, el señor Vélez Ledesma recurre ante nos, al razonar que constituye una violación al debido proceso de ley, ya que según este no tuvo la oportunidad de ser oído, así como tampoco tuvo la oportunidad de contrainterrogar los testigos.

Según el derecho reseñado, a un empleado público se le debe garantizar las exigencias mínimas del debido proceso de ley antes de privarlo de su puesto, a saber: "(1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en el expediente". *Rosa Maisonet v. ASEM, supra,* pág. 384. El derecho a ser oído está estrechamente vinculado a que se celebre una vista informal al empleado. Acerca de la naturaleza de la vista informal, nuestro Tribunal Supremo ha establecido que se debe dar previa a la destitución de un empleado. Se considera el primer escalón procesal, "en el cual ambas partes expresan de manera informal los cargos y las posibles defensas que podrían ser utilizadas posteriormente ante el foro apelativo correspondiente". *U. Ind. Emp. A.E.P. v. A.E.P., supra,* pág. 618. Esa vista informal no tendrá mayores garantías procesales, a menos que la ley orgánica o el reglamento de la agencia las conceda. Por tanto, "no establecerá procedimientos de descubrimiento de prueba ni vistas adversativas formales, ni concederá al empleado el derecho a confrontar toda la prueba en su contra". Íd., 618-619.

Así pues, en nuestro ordenamiento jurídico, se requiere la celebración de una vista informal antes de destituir a un empleado público y privarlo de su sueldo. En el caso de autos, el señor Vélez Ledesma tuvo su vista informal

---

[21] Íd.

en la que compareció acompañado de su representante legal.[22] El hecho de que no se haya celebrado otra vista informal en la CIPA, no significa que se violentó el debido proceso de ley. Recordemos que, el señor Vélez Ledesma compareció a la CIPA como foro apelativo de la determinación DCR. Además, que el Artículo 26 del Reglamento Núm. 7952 le confiere autoridad a la CIPA para disponer sumariamente de una querella o apelación. De modo que, la CIPA no está obligado a celebrar una vista si no existe controversia de hechos materiales. Conviene mencionar que, el recurrente tuvo amplia oportunidad tanto en el DCR, como en la CIPA, para examinar la evidencia, así como rebatir y cuestionar toda aquella prueba presentada en su contra. Por tanto, al celebrarse una vista, la cual le concedió el derecho del recurrente la oportunidad de ser oído, se le garantizó las exigencias mínimas del debido proceso de ley antes de privarlo de su puesto.

De otra parte, el recurrente aduce que existían hechos en controversia que impedían a la CIPA resolver el asunto por la vía sumaria. No obstante, en el recurso ante nos, este no nos señala cuáles hechos están en controversia, más allá de alegar que la prueba es conflictiva porque en el procedimiento criminal se suprimió. Según vimos, la acción administrativa es independiente de la criminal, ya que sus propósitos son distintos y una no puede estar supeditada a la otra. *Trib. Exam. Méd. v. Canas Rivas, supra*, pág. 37. Igualmente, se tratan de procedimientos que requieren diferentes grados de prueba. Íd.; *Mundo v. Tribunal Superior*, supra, pág. 306.

Según vimos, lo que se resolvió en la vía criminal es que el registro realizado fue uno ilegal, así que cualquier evidencia obtenida a partir del mismo es ilegal. Nuevamente, los procedimientos criminales tienen cargas procesales distintos a los administrativos, más aún en los temas de registros y allanamientos que se ha reconocido una amplia protección en el campo penal. Por tanto, que esa prueba haya sido suprimida en el procedimiento

---

[22] Íd., Anejo "Parte 7-Expediente Caso Núm. 19AC115 (CIPA)" del SUMAC TA, págs. 17-18.

criminal, no impide al foro administrativo utilizarla en contra del recurrente, así como darle entera credibilidad. Conviene mencionar que, nos resulta sorpresivo que fue el mismo recurrente quien primero solicitó resolver el pleito por la vía sumaria, con la intención de que se resolviera a su favor como consecuencia del resultado del caso criminal y ahora alegue que existían hechos en controversia que impedían la resolución sumaria del caso.[23]

Así pues, resolvemos que no incidió la CIPA al disponer que no había controversia de hechos y resolver mediante resolución sumaria. Así como, imputarle al recurrente el incumplimiento de Ley Núm. 8 -2017, el Reglamento Núm. 7436, *supra* y el Manual para la Aplicación de Medidas Correctivas y Disciplinarias a los Empleados de la Administración de Corrección, *supra.*

**IV.**

Por los fundamentos antes expuestos, se confirma la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[23] Íd., Anejo "Parte 4-Expediente Caso Núm. 19AC115 (CIPA)" del SUMAC TA, págs. 2-8.